Good morning and may it please the Court. I'm Jeffrey Ehrlich for the Port and I've requested four minutes for my rebuttal. I think this appeal requires the Court to make two fundamental determinations. The first one is whether exclusion Q1 in the Ace policy has a single, clear, unmistakable meaning that bars coverage for the Port's claim. If so, then you'll just affirm the judgment and you don't need to get to the second question. But if you find that there's more than one reasonable way to construe that exclusion, you do have to reach the second question. And the second question is whether or not the Port has advanced an interpretation of the exclusion that is both reasonable and that takes the claim outside of the scope of the exclusion. So I'll turn to that first issue first. I don't think that there's really any dispute on this record that exclusion Q1 is not subject to a single, clear, unmistakable meaning, given its broad language or to phrase it slightly differently. I think the exclusion is phrased so broadly that you can't read it literally because if you do, any overlapping fact, such as just the existence of the Port as a litigant, would be enough to trigger it. And so you have to draw a line somewhere. It has to be cabined. Counsel, in your statement of the questions, would we not also, if we answer your first question in your favor, don't we then have to ask whether Q2 bars coverage? Q2 would be the interrelated wrongful acts? Correct. Yes. But I don't think that it does because that requires more than one wrongful act. And I don't think there are, is more than one wrongful act alleged, certainly not with respect to the misrepresentation claim, which is based. And I'll get through a couple concepts of insurance law that I really think are critical that the court has to apply while it's analyzing this case. Counsel, let's go straight to Q1 and tell me why this language is ambiguous. You have three out of or attributable to, so there's actually four, any prior or pending litigation. Why doesn't that just end the case? Well, the ambiguity is because you can't just stop. First of all, you've got to read the whole exclusion. And so the second clause. Well, all right. Well, let's start with that. So if you're telling me that I have to read the rest, otherwise it won't be clear. Is it clear up to that point? If we stopped right there, well, do you have a case? Yeah, I think we do. Because you still, it's not clear necessarily what it means about this string of synonyms alleging based on arising out of attributable to. Well, it's trying to be as broad as possible to say it's got something to do with. Right. And the question is, got something to do with some sort of connection. And the question is, how much, what is the connection? Well, the connection here was pretty direct. Well, I understand that the port's, I mean, the insurer's claim is that it was very direct. But in our view, tell me why it was not direct. Had to be. Absolutely the direct consequence of the earlier, three earlier actions about whether or not this was or was not a public works project, right? It is clear that the way that the- In fact, the port argued in the earlier proceedings, forgive me, but just so you have the benefit of what I'm thinking to be able to respond. The port was arguing that earlier proceedings, if that's the ruling, there's going to be more litigation. Clearly there is a logical or connection, but for connection that the determination of the- Why isn't it a whole lot more than but for? Because the issue in the Phelps case is whether or not the port made false statements knowing they were false at the time that it made them. And the determination in the prior action and the administrative action didn't deal with the statements at all or their truth or their falsity. It dealt with the financing mechanism and whether when you give rent credits- But all this just had to do with whether the port was wrong, whether they told the contractor, gave him bad advice, whether it was legal advice or whether they were being deceptive. It doesn't really matter. I don't think they were being deceptive. I wouldn't impute that to your client. They got a legal opinion or something and they misjudged it and went to the court and the court said, you're wrong. Our view is that one reasonable interpretation, and again, I don't- If you're drawing lines at the point where you say we can't construe this exclusion according to its plain literal language because to do so is too broad, then we have to cabinet in some way. Because what you're really arguing is not, it seems to me, is not ambiguity of Q1, but how it's applied to particular facts. And those are two different things. You might have an exclusion that says, you know, if it's a defamation claim and there's nothing ambiguous about that, but there might be a question as to whether a particular action really is a defamation claim. So I'm not sure how your argument really is about ambiguity. Well, I guess the ambiguity, the best analogy I have or maybe the illustration I've got is the California Supreme Court case in McKinnon. So you've got a very broad pollution exclusion that basically covers dispersal of irritants or contaminants. And in that case, a landlord hires a pest control company to spray its apartment building for yellow jackets. And as the course of the spraying, unfortunately, one of the tenants is overcome by the fumes and dies. Yes, counsel. But in that case, there was a really, really broad exclusion, just like we've got a really, really broad exclusion there. Right. Yet in that case, there was a fact pattern where the sort of edges of that exclusion, the gray area were implicated. And it seems to me in this case, there's a very broad exclusion. And the district court recognized that and thought the fact pattern here, given what we've just discussed, what Judge Biden was just discussing, that it just landed smack dab in the middle of it. I think the point that I'm trying to express and not doing as well as I need to, I would concede that there is a way, maybe multiple ways to construe the exclusion in a way that bars coverage. I get that. I'm not saying there's no way to construe it on these facts. The question, though, is, is there a reasonable way, some other reasonable construction, which doesn't bar coverage? What would that be? The one that we're advancing, which would be that you imply a gravamen requirement in this exclusion. As a result, you look at whether the gravamen of the prior action and the gravamen of the current action sufficiently overlap. You think that's not the declaration, essentially, that this was a public works project? Absolutely not. The gravamen of the prior action is whether when you fund a project using tax credits, does it trigger California's prevailing wage law? But the context and the consequence that flowed from that was obvious. That may be, Your Honor, but that wasn't what was at issue in the first action. In the second action, the question is whether the port engaged in conduct that was wrongful with respect to Phelps, whether it was misleading. And so you have, essentially, what we're saying is that... You've got a good argument that there's no collateral estoppel, but the connection between the two suits, I mean, the one follows as obviously as, you know, night to day. There is certainly a connection, but our position would be... That's more than just a connection. The problem, I think, is the district judge felt that it was an inevitability, not just... This wasn't just but for causation. This was... It just about had to happen. And, in fact... Therefore, attributable to, at a minimum. There... Our position... The fact that two proceedings might have had different legal issues doesn't mean that it wasn't the same thing. In the course of any litigation, there may be multiple issues dealing with various statutes or equitable doctrines and so on. The resolution of any particular issue then may not have a consequence in subsequent litigation. Again, you don't have a collateral estoppel claim here. Certainly. But there is no question what was at the heart of this thing. Did the port authority give the contractor bad advice because it thought that this was not a public works project? I don't know if you were referring to the original... That wasn't at the heart of the first It was the context of this because there were some very direct consequences that were going to flow from that. Our position is that you can interpret and reasonably interpret this exclusion in a way that it deals with whether the wrongful conduct, whether the wrongfulness of the conduct was addressed in the prior proceeding. In every other case that we've been able to find that deals with this kind of exclusion, it's the same course of wrongful conduct. Except that's not what the exclusion says. It says the same or substantially the same wrongful act, fact, circumstance, or situation. So it's not limited to the wrongful act. Your Honor, I think that it's reasonable to construe that language as a case of wrongful... What is the difference between a fact or a circumstance or the difference between a circumstance or a situation? Well, again, I think it's drafted so it'll be as broad as possible so that it cuts against your argument that the earlier litigation had to allege the same theory because it's trying to say if it's the same situation that's being addressed by the prior litigation. That's why it matters, it seems to me. Well, all I can say is that in our view, the original litigation didn't determine the wrongfulness or even address in any way whether the port's claims to the contract were wrongful or misleading at the time that they were made. The first question dealt with a very question of municipal law under California law and whether or not this project was a public... Counsel, I suggested that the first suit wouldn't be collateral estoppel to the second. It certainly wouldn't have been raised judicata, but as at least to one very critical question, it would have been collaterally estopped from denying that this was a public works project and that the contractor was liable to its employees for additional wages. Yes. But, you know, Phelps could have on its own, could have looked at the law and decided, you know, we think that this is a public work and it could have paid the prevailing wage and then Why is that helpful to our analysis? Because it's not necessary for the negligent misrepresentation claim to have had this prior proceeding. The ACE makes it appear as though it was a conditioned proceeding and there had to be a prior proceeding in order for this other claim to go forward. And that is how it worked out, but that wasn't the only way it could have worked out. And so in our view, you shouldn't apply a prior proceeding exclusion that deals with wrongful conduct if the wrongfulness of that conduct wasn't addressed in the prior proceeding. That's really the essence of the case. Did you want to save some time for a rebuttal? I should. Thank you. Thank you. Good morning, Your Honors. I may please the court. I'm John Hacker for ACE, the appellee. I think the court understands our position. It obviously begins when the Port purchased the ACE policy. It was already enmeshed in a lawsuit over whether Phelps would owe prevailing wages at the Port's project. And the Port, when it purchased the ACE policy, already knew that if that lawsuit established that Phelps did owe prevailing wages, then Phelps was going to seek indemnification for those wages from the Port. The district court was concerned about the breadth of that exclusion, counsel. I sort of wondered out loud about what did it cover? And you've heard my question, supposing, counsel, about on the facts of this case, perhaps this fact pattern fell right within the bullseye of that exclusion. But what about the concern that that exclusion is so broad that it certainly has to be trimmed? There will be cases that will come along where that would, if applied literally, would be quite unreasonable. Aren't there? The district court, yes. The district court, as you acknowledge, acknowledged that point. And it's not a novel one. When you look at the cases construing different language under prior litigation exclusions, half of them talk about the fact that read overly literally, it would encompass too much. And so it's a perfectly well-acknowledged point in the case law. In all the cases, none of them say it's therefore not enforceable or unconscionable or something. All of them do exactly what the district court did here, is turn to the facts in front of court and say whatever the outer limits, the margins of the broad language are, you know, the question in the cases that find the exclusion applies, the facts fit well within the exclusion as they do here. Forgive me for interrupting you. Is there a case law by which you determine the outer edges, the boundaries? Do you have to just line up the cases and figure out which ones fell in and which ones fell without? Or is there a stronger case law that really speaks to that border? Well, I don't know about the border so much. What I would say is the cases do consistently describe this language, the heartland of the language, which is what I think we're concerned with here. And the heartland of this language is the causal connection. And the cases refer to even a sort of quote, read into it, a proximate causal connection, which of course makes sense. You wouldn't have causation without some sense that lawyers are familiar with of a proximate cause. So where there's a causal connection between the prior lawsuit and the current lawsuit, that satisfies the exclusion. Whether there's another connection, another type of situation, there are cases that go the other direction. And you would look to those maybe to limb the edges of the boundaries. But we're not talking about edges or boundaries here. We're talking about the dead square center of the exclusion, which applies by its terms in at least two respects. First to, it's based on arising from or attributable to the prevailing wage litigation itself in the sense that if Phelps had won that suit and was not liable for prevailing wages, there'd be no lawsuit. It's a necessary precondition. It was collateral estoppel on the key issue in the misrepresentation case. It's what established that the prior, that the misrepresentation alleged in this case is a misrepresentation. If the case had gone the other way, there wouldn't be a misrepresentation, there'd be no lawsuit. And in that respect, it's also not just attributable to arising from or based on the prior litigation, but it's also attributable to arising from or based on the same facts, circumstances, or situations. Again, because it establishes the essential fact, circumstance, or situation, which is that the prevailing wage law did apply contrary to the court's understanding. The only thing I suppose I would say in addition is in response to the point my colleague raised with respect to, I pronounce the word Graviman, I'm sure it just depends on how you look at it, but this Graviman test that they're proposing, which I have a number of answers to that. First of all, the problem with that test is that it focuses on the factual overlap and just misses the causation point. I don't want to overstate it and say that you can have causation with no connection. It's about how much of the facts were overlapping. So you're just kind of looking at the wrong thing. You're missing what's most fundamental, which is the causal connection. And I think for that reason, second, I would say it's not used in the case law. We just haven't seen that in the California case law, the Ninth Circuit case law, or cases from other jurisdictions that use Graviman. Understandably, if you're familiar with a SLAP litigation that uses the Graviman test, I don't think it's a particularly satisfying way to think about what was going on in some prior case. The Graviman has led courts all over the place in the SLAP context, so I wouldn't think it's something this court wants to import into the otherwise clear language of the prior litigation exclusion. The last point I would make on it is, in looking at what the court actually means by the Graviman test, if you look at their brief, and I counted four places, pages 19, 39, 47, and 49, what they're really saying is it has to be the same wrongful act. That's the focus, is that the prior case has to involve the same wrongful act as the current case. They say that again and again, and we just know that that's incorrect based on the language of the exclusion. It says wrongful act or fact, circumstance, or situation, which clearly, as Judge Graber pointed out, is intended to broaden it beyond wrongful act. How far exactly, how broad, what the exact meaning of fact is, what differs a fact from a situation. I think there's some logical intuition there, but those aren't questions for today, because this clearly involves, for the reasons I've said, the same fact, situation, or circumstance, i.e. the application of the prevailing wage law, and it goes beyond the same wrongful act, which is the heart of the argument they're making on appeal. It has to be the same wrongful act. That's not what the exclusion says. The plain language clearly applies here, as the district court said, and that ruling should be affirmed. No further questions. I'll see the balance of my time. Thank you. Thank you. Mr. Ehrlich, you have some rebuttal time remaining. I understand, and I understand, and I'm walking uphill, steeply uphill. What you're doing with a great deal of grace, counsel. I'm doing the best I can. We appreciate that. The point that I think is really, I think this is vital, and counsel's as well. It says same wrongful act, but then it goes on to say fact or circumstance, etc. So he's asking you to say ignore part of it and use a particular word. It's or. It's disjunctive. I'm aware. But ultimately, first of all, it's disjunctive, but one clause refers back to the other one. So it's all the same thing. That's the point that we're trying to say, and why my... Boy, I wrote it out phonetically, but now I'm not looking at it. What do you mean it's all the same thing? When a reasonable insured, a lay insured, not a lawyer, not a judge, not an insurance expert, would say wrongful act, fact, circumstance, or situation, they wouldn't see four different things. That's one way, like free and clear, null and void. It doesn't say and, though. It says or. It says the same wrongful act, circumstance, or situation. It's all the same thing. It's different words used to express one idea, and the reasonable interpretation for a lay insured is wrongful act. It all means wrongful act. And so a reasonable insured would look at this and say, I think, reasonably think, that this exclusion says that if my statements were determined to be wrongful in the prior conclusion or misleading in the prior action, then this exclusion applies. But since the prior action dealt with a financing mechanism, and the case against me now deals with whether my statements were misleading. Why isn't the wrongful act deeming this not to be a public project? And that would affect both suits. That would be at the heart of both suits. They would have focused a little differently, because the first one would have focused on, why didn't you think it was a public works project? And the second one would be, well, you gave us bad advice telling us it was a public works project and we didn't have to pay these guys more. The only answer is in the first one, it was simply, the only consideration in the first question was not any statements made by the court, but simply the way that the financing mechanism operated and whether it was a public work or not. And the answer to that, the court confirmed it, but it was the public works statute that determined whether it was a public work or not. Anyway, I think I've ventilated the issues as well as I can, and I appreciate your attention. Thank you, counsel. The case just argued is adjourned.
judges: Graber, Bybee, Christen